UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BELLAMY,

　　　　　　　Plaintiff,　　　　　　　　　　　　　　　Hon. Janet T. Neff

v.　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 1:13-CV-333

COMMISSIONER OF SOCIAL
SECURITY,

　　　　　　　Defendant.
_____/

## REPORT AND RECOMMENDATION

　　　　　This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under

Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the

administrative record, and provides that if the Commissioner's decision is supported by substantial

evidence, it shall be conclusive.  Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States

Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social

security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

　　　　　The Court's jurisdiction is confined to a review of the Commissioner's decision and

of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

2

## **PROCEDURAL POSTURE**

Plaintiff was 39 years of age on his alleged disability onset date.  (Tr. 151).  He is a college graduate and worked previously as a dock/warehouse worker, warehouse supervisor, and pharmaceutical sales representative.  (Tr. 41, 53).  Plaintiff applied for benefits on May 14, 2010, alleging that he had been disabled since January 7, 2007, due to upper extremity radiculopthy, herniated nucleus pulposus, cervical osteophytes, spondyloarthropothy, left rotator cuff tendonitis, arthritis, cervical foraminal narrowing, and cervical stenosis and spondylosis.  (Tr. 151-61, 189). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 81-149).  On February 16, 2012, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert.  (Tr. 47-80). In a written decision dated March 16, 2012, the ALJ determined that Plaintiff was not disabled.  (Tr. 32-42).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 1-7).  Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On August 29, 2006, Plaintiff was examined by Dr. Thomas Rizzo.  (Tr. 285-87). Plaintiff reported that he was experiencing "shoulder girdle discomfort."  (Tr. 285).  Plaintiff reported that he previously received "a selective nerve root block" which "was less than 50% helpful." (Tr. 285).  An examination of Plaintiff's shoulders revealed "marked decrease in internal range of motion of both shoulders."  (Tr. 286).   An examination of Plaintiff's spine revealed

"decreased cervical range of motion," but "no radiating discomfort associated end range of motion."

(Tr. 286).  An MRI of Plaintiff's cervical spine revealed the following:

> Cervical vertebral alignment normal.  Cervical vertebral body heights well maintained.  Multilevel, anterior cervical vertebral osteophyte formation and anterior longitudinal ligament ossification, more pronounced at C3-C4 and C4-C5 levels.  At the C3-C4 level, large anterior osteophytes cause posterior indentation of the cervical airway.  Small left paramidline focal disc protrusion/herniation at the C5-C6 level causes mild deformity of the left ventral aspect of the thecal sac but no cord compression.  Mild disc bulging at C2-C3, C3-C4, C4-C5 and C5-C6 levels produce minimal ventral impression upon the thecal sac.  Cervical spinal cord has normal configuration and signal intensity.  Slight right C4-C5 neural foraminal narrowing secondary to uncinate process hypertrophy.  Mild bilateral neural foraminal narrowing at C5-C6, and moderate bilateral neural foraminal narrowing at C6-C7, secondary to uncinate process hypertrophy and facet hypertrophy.

(Tr. 283).

On August 31, 2006, Plaintiff was examined by Dr. Siong Chi Lin.  (Tr. 281-82).  Plaintiff reported that he was experiencing anxiety, insomnia, and intermittent panic attacks.  (Tr. 281).  Plaintiff also reported that he "sometimes" binge drinks on the weekends.  (Tr. 281).  The results of a mental status examination were unremarkable.  (Tr. 282).  The doctor concluded that Plaintiff would benefit from anti-anxiety medication which was initiated.  (Tr. 282).

On September 1, 2006, Plaintiff was examined by Dr. H. Gordon Deen.  (Tr. 275-76).  Plaintiff reported that he was experiencing neck pain which "spreads diffusely to both shoulders left greater than right."  (Tr. 275).  The doctor observed that Plaintiff "does not have any radicular myelopathic symptoms."  (Tr. 275).  Plaintiff reported that his pain "averages 5/10 with occasional spikes to 8/10."  (Tr. 275).  A physical examination revealed the following:

> Cervical range of motion is -1 in all directions.  Negative Spurling's.[1]
> Negative Lhermitte's.[2]   His motor examination is intact in all 4
> extremities.  Deep tendon reflexes are normal and symmetric in all 4
> extremities.   Hoffmann sign[3] and Babinski sign[4] are negative
> bilaterally.

(Tr. 275).

        The doctor reviewed the x-rays and MRI examinations that were recently performed,

concluding that Plaintiff's cervical spine MRI "shows modest age-related spondylitic change at

multiple levels" and that x-rays of Plaintiff's cervical spine "show good alignment with no abnormal

motion on flexion and extension views."  (Tr. 275-76).  Dr. Deen concluded that Plaintiff was

experiencing "persistent neck pain with no evidence of cervical myelopathy, radiculopathy, or

instability." (Tr. 276).  The doctor concluded that surgical intervention was not appropriate and that

instead Plaintiff should be treated with "conservative measures."  (Tr. 276).

        On September 5, 2006, Plaintiff was examined by Dr. Salim Ghazi.  (Tr. 272-73).

Plaintiff reported that he was experiencing neck and shoulder pain which "ranks at 5-6/10 on [an]

average day."  (Tr. 272).  Plaintiff exhibited "normal range of motion of the cervical spine."  (Tr.

273).  A neurological exam of Plaintiff's upper extremities revealed "normal strength, normal

---

    [1]  A positive Spurling's test suggests the presence of a cervical nerve root disorder.  Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical Evaluation*, American Family Physician, May 15, 2000, *available at*, http://www.aafp.org/afp/20000515/3079.html (last visited May 29, 2014).

    [2]  Lhermitte's sign consists of twinges resembling a mild electrical shock felt in various parts of the body.  It is observed in cases of multiple sclerosis and irritation and thickening of the membranes covering the brain and spinal cord, as well as other demyelinating diseases (i.e., diseases in which the myelin covering of nerves is lost).  J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* L-100 (Matthew Bender) (1996).

    [3]  Hoffman's sign is a neurological sign which "is an indicator of a number of neurological conditions including cervical spondylitis, other forms of spinal cord compression and multiple sclerosis."  *See* Hoffman's Sign, available at, http://www.mult-sclerosis.org/Hoffmanssign.html (last visited on May 29, 2014).

    [4]  Babinski test is a neurological test designed to discern damage to the central nervous system.  *See* Babinski, available at http://www.medterms.com/script/main/art.asp?articlekey=7171 (last visited on May 29, 2014).

sensation to touch, and normal reflexes." (Tr. 273). The doctor concluded that Plaintiff was experiencing "mechanical neck pain" with "a strong myofascial and facetogenic component." (Tr. 273).

On May 22, 2007, Plaintiff was examined by Dr. Randal Palmitier. (Tr. 358-59). Plaintiff reported that he was experiencing pain in his neck and left arm which he rated as 6/10. (Tr. 358). A physical examination revealed that Plaintiff "has excellent range of motion and negative Spurling's maneuver" with "no neurologic deficit." (Tr. 358). The doctor recommended that Plaintiff undergo an epidural injection and, furthermore, "start looking for other options for work that would not require such prolonged static postures and prolonged driving as is now necessary for his sales job." (Tr. 359).

Treatment notes dated July 11, 2007, indicate that Plaintiff was "doing quite well" following injection therapy. (Tr. 356). Treatment notes dated July 25, 2007, indicate that Plaintiff experienced "approximately 60-70% improvement in the symptoms" following injection therapy. (Tr. 355). Plaintiff reported that his pain was currently "about 4-5/10." (Tr. 355).

Treatment notes dated March 4, 2008, indicate that Plaintiff "quit looking for a job" because "all the jobs he was interested in require a clean driving record." (Tr. 337). Treatment notes dated August 20, 2009, indicate that Plaintiff had received "some job offers," but apparently turned them down because they were "commission only." (Tr. 327). Plaintiff reported that he recently took the GMAT and "wants to be involved in international business." (Tr. 327).

Treatment notes dated September 15, 2009, indicate that Plaintiff and his brother "have a power washing business where they do boats at marinas and houses." (Tr. 363). Treatment

notes dated January 8, 2010, indicate that Plaintiff was doing "okay" and was doing "landscaping for friends."  (Tr. 325).

On March 18, 2010, Plaintiff was examined by Dr. Palmitier.  (Tr. 353-54).  The doctor acknowledged that he last examined Plaintiff "three years ago."  (Tr. 353).  A physical examination revealed "restricted" range of cervical motion, but "normal" strength and negative Hoffman's sign. (Tr. 354).  Plaintiff was prescribed Medrol and Motrin. (Tr. 354).  Treatment notes dated April 12, 2010, indicate that Plaintiff's "symptoms decreased 40-50%" with Medrol and that Plaintiff "is now back to taking Motrin only."  (Tr. 352).

On August 10, 2010, Plaintiff participated in a consultive examination conducted by Dennis Mulder, Ed.D.  (Tr. 368-72).  Plaintiff reported that he "has pain daily and constantly in his neck, both shoulders, and his lower back" which "prevent him from being employed."  (Tr. 368). With respect to his activities, Plaintiff reported that he watches television, walks his dog, listens to music, vacuums, cooks, washes dishes, washes laundry, and mows the lawn.  (Tr. 369).  Plaintiff exhibited "no posture or gait problems."  (Tr. 369).  The results of a mental status examination were unremarkable.  (Tr. 370-71).  Plaintiff was diagnosed with: (1) depressive disorder; (2) alcohol abuse; (3) anxiety disorder; and (4) history of marijuana use in remission.  (Tr. 371).  Plaintiff's GAF score was rated as 55.[5]  (Tr. 371).  The doctor further observed that Plaintiff "appeared to have no difficulty understanding, remembering, and following through with simple instructions, and he

_____

[5]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning."  DSM-IV at 34.

appears to be preparing himself for further education and work activities that do not involve extensive physical exertion."  (Tr. 371).

Treatment notes dated March 2, 2011, indicate that Plaintiff "isn't looking for work," but "does a little bit self-employed."  (Tr. 393).

On May 19, 2011, Plaintiff was examined by Dr. Palmitier.  (Tr. 382-83).  Plaintiff reported experiencing pain in his neck and upper extremities.  (Tr. 382).  Physical examination revealed the following:

> Physical examination reveals restricted rotation bilaterally.  Spurling maneuver causes scapular pain bilaterally.  Upper extremity reflexes are symmetric and strength is normal.

(Tr. 382).

On February 6, 2012, Dr. Palmitier was questioned by Plaintiff's attorney.  (Tr. 396-406).  When asked whether Plaintiff could "engage in gainful employment on a sustained basis," the doctor responded:

> The problem with what Kevin is experiencing is that it will be most provoked by static postures, just sitting, and driving, in particular.  It is also provoked by physical activities.  So there isn't much he could do for gainful employment, and the pain that he experiences would be distracting enough that it would be very difficult to concentrate, even if he had a very light-duty job.

(Tr. 405).

At the administrative hearing, Plaintiff testified that he last worked as a pharmaceutical sales person, but that he lost that job following a DUI conviction.  (Tr. 57-59).  Plaintiff testified that he "didn't experience any relief" from the injection therapy that he previously underwent.  (Tr. 64).  When asked why he was unable to work, Plaintiff responded:

> The symptoms change, but it's a tightness between my shoulders that
> runs up my neck. And it's a - - just a very intense muscle spasm. It's
> an aching, and it's - - the pain is very hard to describe outside of its
> intensity. And the only - - how I feel I could get, you know, relief is
> if I were put in a vice and added pressure to the, you know, in
> between my shoulder blades. It's just so - - the muscles are so tight
> that I - -

(Tr. 65-66). Plaintiff further reported that his pain is increased "by activities." (Tr. 66).

Specifically, Plaintiff stated that "raking leaves, for instance...will put me down for three days." (Tr.

66). Plaintiff also reported that after helping his brother "light his 20-foot Christmas tree outside"

he was "down for a number of days." (Tr. 66). Plaintiff also testified that his "goal" was "to be an

attorney" because he "would like to be in a self-employed position." (Tr. 68). Plaintiff also testified

that he would be unable to perform a job where he was "able to sit at a desk, stand when you want

to, walk around when you want to, don't - not engage in any significant lifting" because he

"wouldn't be reliable." (Tr. 71). When asked to elaborate on this, Plaintiff testified that he "would

require downtime on the couch, resting my neck." (Tr. 71). Plaintiff reported that he worked as a

substitute teacher in 2008 or 2009. (Tr. 72-73).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating

disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a

---

[6] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) cervical spine stenosis; (2) myofascial pain of the neck and scapular/shoulder blades; (3) generalized anxiety disorder; (4) attention deficit hyperactivity disorder (ADHD); and (5) history of alcohol abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20

---

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 34-36).  The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can occasionally crawl; (2) he must avoid concentrated exposure to unprotected heights and dangerous machinery; (3) he can occasionally reach overhead bilaterally; (4) he must avoid static positioning of his neck; (5) he cannot perform commercial driving or extensive computer usage; and (6) he is limited to unskilled work.  (Tr. 36).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 16,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding.  (Tr. 75-76).  This represents a significant number of jobs.  *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274

(6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.       **The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that he was impaired to a far greater degree than the ALJ recognized and was, therefore, simply unable to work. The ALJ accorded limited weight to Plaintiff's allegations on the ground that Plaintiff was "lacking in credibility." (Tr. 39-40). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009) Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

12

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference."  *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony").  It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).  In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable."  *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

With respect to Plaintiff's credibility, the ALJ observed as follows:

13

In this case, the medical evidence does not support a finding that the claimant is incapable of performing any sustained work.   The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.   The record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms; at one point there was a gap in treatment of nearly three years, though the claimant alleges he was nonetheless disabled. Additionally, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and conservative in nature.   The Mayo Clinic, a very well-regarded health care provider, noted the claimant's pain was mostly myofascial and none of his providers have said he requires surgery. Further, the record shows that the claimant reported treatment had been 40 to 50% effective.   The claimant has also treated for depressive symptoms and anxiety, though that treatment has also been relatively conservative and his medications effective.   He has not been psychiatrically hospitalized, has not presented with delusional or psychotic thoughts and has not been suicidal.   In fact, the claimant has related many of his psychological symptoms to his physical pain and lack of employment.   As such, the record demonstrates that the claimant is not credible in his subjective allegations regarding the degree of his symptoms and limitations at times.   The claimant has presented objective medical findings that he has mild to moderate impairments, but has not presented evidence that they are of a degree he would be unable to perform and sustain full-time work within the residual functional capacity which gives the claimant all benefit of doubt considering the evidence as a whole.

Additionally, the claimant is found to be lacking in credibility and his testimony and general allegations are given less than controlling weight.   As noted in the introductory section on Applicable Law, the claimant bears the burden of proof in this matter.   A significant element i[n] meeting one's burden of proof is their own credibility. In the instant case, the claimant has made various allegations that are not in keeping with the record and the observations made by the undersigned.   Despite his allegations and testimony that his condition has rendered him wholly disabled and unable to work, the record shows that the claimant was "doing some landscaping for friends" and "helping his brother renovate his house."   The claimant also reported living in Chicago, looking for jobs and that he had received "some offers but commission only."   He also reported that he "has been applying [for jobs] online" and "will start knocking on doors this week." The claimant even took a graduate school entrance exam.

14

The record also noted that during his alleged period of disability, the claimant "has been doing a lot of landscaping - maintenance stuff - during the day" and he was "looking for a job at night." He later informed his doctor that he had been traveling out of state, spending 10 days in Florida and that he got his driving privileges back following a DUI. Apparently, the claimant was even entrepreneurially self-employed while allegedly disabled, as "he and his brother have a power washing business where they do boats at marinas and houses." As recently as January of 2011, the record shows the claimant "does a little bit self-employed" (sic). Thus, despite allegations that he has been completely unable to perform any work on a full time and sustained basis since his alleged onset date, the record demonstrates evidence to the contrary.

Based on the claimant's inconsistencies, the apparent exaggeration of his symptoms and limitations, the mild and conservative treatment, as well as the claimant's very active participation in many activities, the undersigned finds that the claimant is less than fully credible and therefore gives less than controlling weight to his allegations. The undersigned further notes that the claimant's lack of credibility was a factor in his determination regarding the claimant meeting his burden of proof in this case.

(Tr. 39-40).

The ALJ's observations and conclusions concerning Plaintiff's credibility are supported by substantial evidence and comply with the standard articulated above. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

## II.         The ALJ did not Overlook Plaintiff's Work History

Plaintiff next asserts that he is entitled to relief because the ALJ failed to consider his work history. Specifically, Plaintiff argues that the ALJ failed to account for the fact that he experienced difficulty performing his past relevant work. As discussed above, however, the ALJ

expressly determined that Plaintiff was unable to perform his past relevant work thus acknowledging the difficulties Plaintiff experienced performing such.  That Plaintiff was unable to perform his past relevant work, however, does not preclude a finding that there exist a significant number of other jobs which Plaintiff can still perform, as the ALJ found in this case.  Accordingly, this argument is rejected.

**III.        The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff next argues that he is entitled to relief because the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ's finding that he is limited to unskilled work fails to sufficiently account for the limitations he experiences with respect to concentration, persistence, and pace.  The ALJ's determination that Plaintiff experiences only moderate limitations in concentration, persistence, and pace is supported by substantial evidence.  Plaintiff's argument that his limitations with respect to concentration, persistence, and pace are inconsistent with unskilled work is not persuasive.  *See, e.g., Lewicki v. Commissioner of Social Security*, 2010 WL 3905375 at *2-3 (E.D. Mich., Sept. 30, 2010) (limitation to unskilled work sufficiently accounted for claimant's moderate limitations with respect to concentration, persistence, and pace).  Plaintiff bears the burden through step four of the sequential process, the point at which his RFC is determined.  Plaintiff has failed to demonstrate that his RFC fails to adequately account for his non-exertional limitations.  This argument is, therefore, rejected.

IV.        **The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence**

As previously noted, when asked whether Plaintiff could "engage in gainful employment on a sustained basis," Dr. Palmitier stated:

> The problem with what Kevin is experiencing is that it will be most provoked by static postures, just sitting, and driving, in particular. It is also provoked by physical activities. So there isn't much he could do for gainful employment, and the pain that he experiences would be distracting enough that it would be very difficult to concentrate, even if he had a very light-duty job.

(Tr. 405).

As Plaintiff asserts, the doctor essentially stated that Plaintiff experienced work-preclusive limitations with respect to his ability to: (1) sit; (2) drive; (3) use a keyboard; and (4) concentrate. The ALJ afforded limited weight to Dr. Palmitier's opinion. Plaintiff asserts that he is entitled to relief because the ALJ improperly discounted the opinions from his treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

17

235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such.  *Id.* at 376.  In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors.  *Id.* (citing 20 C.F.R. § 404.1527).  While the ALJ is not required to

explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered

those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

> With respect to Dr. Palmitier's opinion, the ALJ stated as follows:
>
> The undersigned has also considered the sworn statement of Dr. Ronald Palmitier, dated February 7, 2012.  The doctor stated the claimant's diagnoses and the doctor stated that the claimant "will be most provoked in static postures, just sitting, and driving in particular. It is also provoked by physical activities. So there is no[t] much he could do for gainful employment, and the pain he experiences is distracting enough that it would be very difficult to concentrate, even if he had a very light-duty job."  The doctor later stated the claimant would not be able to engage in full time employment.  The undersigned also finds this statement largely unpersuasive given the record as a whole and the multiple references to various physical activities in the file, discussed in detail above. Again, medical doctors are not qualified to render opinions on the ultimate issue of disability.  The determination of disability is a legal conclusion that is reserved solely to the Commissioner.  The doctor's specific prohibitions against static postures and against driving are reasonable, credible, and consistent with the overall medical evidence. However, a prohibition against all work activity is not only impermissible under our rules, but it is not consistent with the claimant's repeated demonstrated ability to engage in a host of activities.  Thus, the undersigned affords less than controlling weight to this statement.

(Tr. 40).

The ALJ agreed with Dr. Palmitier that Plaintiff's ability to drive and use a keyboard

were significantly limited.  As for the doctor's assertion that Plaintiff experienced work-preclusive

limitations with respect to his ability to sit or concentrate, as the ALJ correctly concluded, such are

inconsistent with the evidence and Plaintiff's reported activities.  The ALJ's rationale is supported

by substantial evidence and complies with the aforementioned legal standard.  In sum, the ALJ's

conclusion to afford less than controlling weight to Dr. Palmitier's opinions is supported by substantial evidence.

**V.          Plaintiff has Waived any Argument Regarding Sentence Six Remand**

Finally, as part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-6, 411-23). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: June 4, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge